*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                 :

| | |
|---|---|
| JUSTIN C. LEPPING, | : |
| Plaintiff, | :    Civil Action No. 18-02118 (FLW) (LHG) |
| v. | : |
| | :         **OPINION** |
| COUNTY OF MERCER, MERCER COUNTY PROSECUTOR'S OFFICE, COUNTY OF BUCKS, BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE, DETECTIVE ROBERT MCNALLY, DETECTIVE EDWARD HUGHES, DETECTIVE DAVID HANKS, DETECTIVE THOMAS THIEL, DETECTIVE MARTIN MCDONOUGH, CHIEF VELDON HARRIS, CHIEF CHRISTOPHER F. MCATEER, JR., JOHN DOE POLICE CHIEF (a fictitious name), CAPTAIN JOHN DOE, (a fictitious name), LIEUTENANT JOHN DOE (a fictitious name), SERGEANT JOHN DOE (a fictitious name) , JOHN DOE SUPERVISOR (a fictitious name), JOHN DOE OFFICER 1-10 (fictitious names), jointly, severally and/or in the alternative, | : |
| Defendants. | : |

_____  :

**WOLFSON, United States District Judge:**

Pending before the Court is a motion to dismiss from Defendants the Mercer County Prosecutor's Office ("MCPO"), MCPO Detective Robert McNally, MCPO Detective Edward Hughes, and MCPO Chief Veldon Harris (together, with Hughes and McNally, "Individual Defendants") (collectively, "MCPO Defendants"), and a separate motion to dismiss from the County of Mercer (collectively, with the aforementioned Defendants, "Moving Defendants").

Plaintiff Justin C. Lepping ("Plaintiff") brought this §1983 suit against Moving Defendants, the County of Bucks, the Buck's County District Attorney's Office ("BCDO"), BCDO Detectives David Hanks, Thomas Thiel, and Martin McDonough, and BCDO Chief Christopher F. McAteer, Jr.[1] Plaintiff asserts claims seeking punitive and compensatory damages for violations of his constitutional rights, negligence, and negligent hiring, training, and supervision, in connection with his arrest on sexual assault charges, which were subsequently dropped. Plaintiff has since announced his intention not to oppose the County of Mercer's motion to dismiss and has voluntarily dismissed the BCDO Defendants from the case.

Because Plaintiff has not opposed the County of Mercer's motion, this motion is granted and all claims against the County of Mercer are dismissed. In their motion, MCPO Defendants maintain that this Court lacks subject matter jurisdiction and that Plaintiff fails to state a claim. For the following reasons, MCPO Defendants' motion to dismiss is also granted.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's claims arise from his arrest on sexual assault charges, which were subsequently dismissed by the MCPO. The events that led to this arrest began in December of 2016, when the MCPO received a tip from the Hamilton Police Department that a 10-year-old female with the initials O.M. was exchanging communications "of an inappropriate, sexual nature" with an adult male. Compl. at ¶¶ 22-23.

MCPO Detective Hughes conducted a forensic examination of O.M.'s cellular phone and concluded that Plaintiff had sent, and received, numerous "Snap Chat," text, and other messages of a sexual nature to O.M. *Id.* at ¶ 27. At that time, MCPO enlisted the help of the BCDO, the prosecutor's office where Plaintiff resided, to obtain and execute a search warrant of Plaintiff's

---

[1] The Court will refer to defendants from BCDO as "BCDO Defendants."

home. *Id.* at ¶ 30. Detective Hanks of the BCDO then conducted his own review of the forensic data and concluded that there were over 570 "chats" of a sexual nature between Plaintiff and OM. *Id.* at ¶¶ 31-32.

On the morning of January 13, 2017, after obtaining an arrest warrant on charges of Aggravated Sexual Assault (in violation of N.J.S. 2C:14-2A(l)); Sexual Assault (in violation of N.J.S. 2C:14-2(b)); Endangering the Welfare of a Child (in violation of N.J.S. 2C:24-n4(a)l)) and Abuse of a Child (in violation of N.J.S. 24:4(b)5(b)), members of the BCDO arrested Plaintiff in his home, located in Sellersville, Pennsylvania. *Id.* at ¶¶ 16 -17.[2] Plaintiff was detained and extradited to New Jersey and was held in the Mercer County Jail, without bail, from January 13, 2017 through March 29, 2017. *Id.* at ¶ 20.

Following the search and arrest of Plaintiff, Detective McNally filed an affidavit in support of an application to a New Jersey Superior Court judge to search phones and other devices recovered from Plaintiff's residence. *Id.* at ¶ 36. In it, Detective McNally drew the same conclusions and swore to the same facts and opinions as Detective Hanks. *Id.* at ¶ 37.[3] After the search warrant was obtained, Plaintiff's phones and electronic devices were searched; however, none of the seized devices revealed any evidence of contact between Plaintiff and O.M., with the exception of an incoming FaceTime communication that O.M. initiated. *Id.* at ¶ 38.

---

[2] In his Complaint, Plaintiff alleges that the MCPO and "other law enforcement officers" were somehow involved in the arrest. However, in his opposition brief, Plaintiff has seemingly conceded that the BCDO acted alone in executing the arrest. ECF No. 21 at 2 ("In the early morning hours of January 13, 2017, Plaintiff was unlawfully seized and arrested while in his home, located in Sellersville, Pennsylvania, by members of the Bucks County District Attorney's Office."), 13 ("The Bucks County District Attorney's Office was acting at the request and on behalf of the Mercer County Prosecutor's Office.")

[3] In addition to the allegations related to Detective McNally in the Complaint, Plaintiff also submits, as an exhibit to its opposition brief, an "affidavit and complaint warrants" that Detective McNally purportedly prepared prior to the arrest. ECF No. 21-1. As Plaintiff did not include this exhibit as part of its Complaint, the Court will not consider it at this time.

While in custody, Plaintiff enlisted the help of a forensic examiner, James Gogoski, to conduct an independent forensic review of all the electronic data at issue in the case. *Id.* at ¶ 39. The examination allegedly confirmed that the only contact between O.M. and Plaintiff was one FaceTime communication that OM initiated, *id.* at ¶ 42, and that O.M. initiated two more FaceTime communications that Plaintiff did not accept. *Id.* at ¶ 43. According to the investigation, O.M. obtained Plaintiff's contact information from the dating website Ashley Madison, of which Plaintiff was a member. *Id.* at ¶ 45. Plaintiff contends that "there is no evidence Plaintiff ever initiated contact with, directed, ordered, demanded, instructed or otherwise told O.M. to commit acts of sexual nature and/or send any inappropriate photographs and/or videos." *Id.* at ¶ 46. On May 8, 2017, the MCPO dismissed all charges against Plaintiff. *Id.* at ¶ 21.

As a result of his arrest and subsequent imprisonment, Plaintiff maintains that he sustained multiple serious emotional injuries including acute stress, insomnia, depression, irritability as well as shock to his nervous system. *Id.* at ¶ 47. He also suffered "mental anguish, emotional distress and the loss of the enjoyment of daily life," *id.,* at ¶ 48, and "incur[red] financial expenses and losses including, but not limited to loss of employment, limited employment and medical expenses." *Id.* at ¶ 50.

On February 14, 2018, Plaintiff initiated the present action against the named defendants. The Complaint asserts the following claims:

> Count I - Claims for False Arrest and False Imprisonment (in violation of Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights) Detectives Hughes and McNally. *Id.* at ¶¶ 52-57

> Count II - Claims under 42 U.S.C. §§ 1983 and 1988 against all defendants; alleging these Defendants:

have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or the acquiescence of the use of unlawful seizures, as well as "cover-up" arrests, and subjecting them to the same type of treatment to which Plaintiff was subjected, which policy constitutes the use of unlawful seizures and violates" the Fourth and Fourteenth Amendments of the U.S. Constitution, and the New Jersey Constitution.

have adopted and maintained for many years a recognized and accepted policy, custom, and practice of systematically subjecting citizens to unlawful seizures, false arrests, false imprisonment and denial of due process, by agents, servants and/or employees, who were and are now attempting to cover-up for fellow off duty officers, as is allegedly evidenced by the aforesaid acts of the named defendants upon the Plaintiff as described in the above paragraphs, which policy constitutes a violation of the Equal Protection Clause and Due Process Clause and violates: the Fourth and Fourteenth Amendments of the U.S. Constitution, and the New Jersey Constitution.

have been deliberately indifferent to the rights of citizens to be free from unlawful seizures which violates" the Fourth and Fourteenth Amendments of the U.S. Constitution, and the New Jersey Constitution.

knew or should have known of the above described policy, custom and practice of Defendants, the Mercer County Prosecutor's Office and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice including but not limited to, inter alia

(a)     Failure to have clear, concise, and appropriate police directives;

(b)     Failure to properly supervise and/or control Police Officers, specifically regarding investigation of altercations;

(c)     Failure to restrain the use of unlawful seizures and to have clear concise and appropriate directives regarding same;

(d)     Failure to have proper counseling, use of force re-training, sensitivity training, psychiatric evaluations, or supervisory briefing/discussion with members of the

police department with prior and ongoing complaints of unlawful seizures;

(e)    Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigation resulting in appropriate and documented corrective actions at all levels of the Mercer County, Bucks County and/or Mercer County Prosecutor's Office and/or Bucks County District Attorney's Office;

(f)    Failure to have in existence and/or maintain proper personnel training procedures, specifically regarding unlawful seizures of persons, necessary to prevent the type of conduct as aforesaid;

(g)    Otherwise acting without due regard for the rights, safety and position of the Plaintiff herein, in accordance with the laws of the State of New Jersey, the Commonwealth of Pennsylvania; and otherwise violating the ordinances of Defendants County of Mercer, County of Bucks and/or the Mercer County Prosecutor's Office and/or the Bucks County District Attorney's Office department; Directives of the County of Mercer, County of Bucks and the Statutes of the State of New Jersey and the Commonwealth of Pennsylvania.

(h)    By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, the Defendants, Mercer County, the Chiefs, condoned in, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the" Fourth and Fourteenth Amendments of the U.S. Constitution, and the New Jersey Constitution. *Id.* at ¶¶ 58-70.

Count III - Claims under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 1988 against all Defendants alleging they conspired to harm Plaintiff and deprive Plaintiff of equal protection of the law and of his "rights and privileges: under the U.S. Constitution and New Jersey Constitution. *Id.* at ¶¶ 71-78.

Count IV - A negligence claim against all Defendants. *Id.* at ¶¶ 79-82;

Count V - A negligent hiring, training, and supervision claim against the MCPO and Chief Harris. *Id.* at ¶¶ 83-85.

On March 27, 2018, Moving Defendants moved to dismiss the Complaint. ECF Nos. 17, 18. MCPO Defendants' motion asserted that the Complaint should be dismissed on the following grounds: (I) sovereign immunity; (2) named Defendants are not "persons" under 42 U.S.C. § 1983; (3) Plaintiff's failure to state a plausible claim for false arrest and false imprisonment; (4) bar to suit based on vicarious liability or respondent superior; (5) qualified immunity, and (6) good faith immunity. After filing a brief opposing MCPO Defendants' motion, Plaintiff submitted a letter to the Court on April 30, 2018, announcing that he would not oppose the County of Mercer's motion, ECF No. 25, and on May 18, 2018, Plaintiff submitted a notice of voluntary dismissal as to the BCDO Defendants, which was entered on August 20, 2018. ECF No. 27.

## II.    <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction is required for a district court to reach the merits of a claim, "the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Bishop v. Department of Homeland Sec.*, No. 14-5244, 2015 WL 2125782, at * 2 (D.N.J. May 6, 2015). Unlike a Rule 12(b)(6) motion, there is no presumption of truth attached to the allegations in the complaint when determining the court's subject matter jurisdiction. *See id.*; *see also Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir. 1977).

A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F. 3d 169, 176

(3d Cir. 2000). A facial attack, such as in this case, "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because ... it does not present a question of federal law ...". *Constitution Party of Pennsylvania v. Aichele*, 757 F. 3d 347, 358 (3d Cir. 2014). In that regard, the court views only the allegations in the pleadings in the light most favorable to the plaintiff. *U.S. ex Rel. Atkinson v. PA. Shipbuilding Co.*, 473 F. 3d 506, 509 (3d Cir. 2007).

Defendants also move to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not

impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

## III.  DISCUSSION

### A.  Sovereign Immunity

Before the Court can consider the merits of Plaintiff's claims, MCPO Defendants' assertion that the MCPO has sovereign immunity from Plaintiff's claims must be addressed. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100 (1984). Thus, based on the doctrine of sovereign immunity, states

cannot be sued in federal court, unless Congress has abrogated that immunity or the State has waived it. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The consent to be sued "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).

Although the language of the Eleventh Amendment refers to only "states," arms of the state—including agencies, departments, and officials—are entitled to the protection of Eleventh Amendment immunity from suit when the state is the real party in interest. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002); *see also Chisholm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). Those entities, by their very nature, are so intertwined with the state that any suit against them renders the state the real, substantial party in interest. *See Maliandi v. Montclair State Univ*., 845 F.3d 77, 83 (3d Cir. 2016). Where there is no precedent that a particular agency, as a matter of law, is an arm of the state for sovereign immunity purposes, courts employ a fact-intensive, three-step balancing test, first set out in *Fitchik v. New Jersey Transit Rail Operations, Inc*., to ascertain whether a state-affiliated entity is an arm of the state that falls within the ambit of the Eleventh Amendment. 873 F.2d 655, 659 (3d Cir. 1989).

The *Fitchik* factors are (1) funding: whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the state; (2) status under state law: whether the entity is treated as an arm of the state under state case law and statutes; and (3) autonomy: whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control. *Id.* Each factor involves a fact-intensive inquiry. *See Maliandi*, 845 F.3d at 84 (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007)

(internal quotations omitted)). The court balances the factors to determine whether an entity amounts to an arm of the state. *See Fitchik*, 873 F.2d at 664; *Maliandi*, 845 F.3d at 84. However, when the entity at issue is a county prosecutor's office, courts in the Third Circuit focus on whether the claims are related to the office's "classic law enforcement functions" or its administrative functions. "When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996). Eleventh Amendment immunity may not apply, however, when prosecutorial defendants "perform administrative tasks unrelated to their strictly prosecutorial functions." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013). The party asserting the immunity has the burden of production and persuasion. *See Bowers*, 475 F.3d at 546 & n.25; *Christy v. Pa.Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d. Cir. 1995).

At the outset, I note that "Courts within the Third Circuit have consistently held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey." *Duncan v. Office of Passaic Cnty. Prosecutor,* No. 05–1931, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012); *see also Beightler v. Office of Essex Cnty. Prosecutor,* 342 F. App'x 829, 832 (3d Cir. 2009) (holding that the Essex County Prosecutor's Office "was acting as an arm of the state and entitled to immunity under the Eleventh Amendment" when its prosecutors were performing law enforcing and investigative functions); *Banda v. Burlington Cnty.,* 263 F. App'x 182, 183 (3d Cir. 2008) (affirming dismissal of damages claims against individual prosecutors in their official capacities on Eleventh Amendment grounds), *cert. denied,* 555 U.S. 896 (2008); *Wright v. Middlesex Cnty. Prosecutor's*

*Office,* No. 10–1351, 2012 WL 1900646, at *4 (D.N.J. May 24, 2012) (dismissing claims against the Middlesex County Prosecutor's Office on Eleventh Amendment grounds).

Consistent with this precedent, MCPO Defendants here assert that all three *Fitchik* factors weigh in favor of finding the MCPO to be an arm of the state. Plaintiff does not oppose MCPO Defendants' argument as to the first and third factors. Regarding the first factor, funding, MCPO Defendants cite *Wright v. State*, in which the New Jersey Supreme Court held that when an employee of a county prosecutor's office is sued for "actions taken in the discharge of their law enforcement duties," the State must provide defense and indemnification. 778 A.2d 443, 464-65 (N.J. 2001). MCPO Defendants assert that, here, Plaintiff's claims clearly relate to the discharge of the MCPO's law enforcement duties, and further, the Attorney General's office has appeared on behalf of MCPO Defendants to defend the claims; thus, the State has assumed responsibility for the defense and indemnification of MCPO Defendants. *See also Adams v. City of Atlantic City*, No. 13–7133, 2014 WL 2094090, at *10 (D.N.J. May 20, 2014) (finding county prosecutor's office to be an arm of the state when the defendants asserted, without objection, that the "State of New Jersey has agreed to defend and indemnify these moving Defendants since they are employees of the Atlantic County Prosecutor's Office."). As to the third *Fitchik* factor, the agency's degree of autonomy, MCPO Defendants cite to the Attorney General's statutory authority to supervise a county prosecutor in virtually any proceeding and dictate law enforcement policies for the county's prosecutor's office. *See In re Camden Police Cases*, No. 10-4757, 2011 WL 3651318, at *9 (D.N.J. Aug. 18, 2011) (holding that in view of the statutory structure set out under New Jersey law, "county prosecutors operate as agents of the State when they engage in law enforcement activities and act as agents of the county when they engage in administrative matters").

Plaintiff instead argues that under the second *Fitchik* factor, New Jersey law has not treated municipal prosecutor's offices as arms of the state when faced with allegations like those here. In that regard, Plaintiff's argument centers on the issue of whether the MCPO is being sued for its law enforcement or administrative functions. Plaintiff alleges that the MCPO "developed and maintained policies exhibiting deliberate indifference to the constitutional rights of persons in the County of Mercer, inadequately and improperly supervised and trained police chiefs and police officers in Mercer County," which are functions that are "appropriately characterized as administrative, rather than prosecutorial."[4] ECF No 21 at 8. Numerous courts in this district have rejected this argument, however, finding that failure to train and supervise are squarely within the law enforcement functions of prosecutors' offices. *See Pitman v. Ottehberg*, No. 10–2538, 2011 WL 6935274, at *6 (D.N.J. Dec. 30, 2011) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *In re Camden Police Cases*, No. 10-4757, 2011 WL 3651318, at *7-8 (D.N.J. Aug. 18, 2011) (holding that providing training and supervision to investigators is prosecutorial function); *Landi v. Borough of Seaside Park*, No. 07-531, 2009 WL 606141, at *4-5 (D.N.J. March 9, 2009) (same).

Plaintiff asks the Court not to follow these cases and instead rely on *Carter v. City of Philadelphia* to find that the types of training and supervisory activities alleged are not prosecutorial in nature. 181 F.3d 339 (1999). There, the Third Circuit held that a Philadelphia, Pennsylvania prosecutor's office's policies regarding training and supervision involved administration rather than law enforcement, and found that the office was not an arm of the state.

---

[4] As an initial matter, Plaintiff's claims leveled at the actual investigation and arrest are clearly law enforcement functions for which the MCPO is entitled to sovereign immunity. *See Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013).

Courts in this district have, on multiple occasions, rejected similar attempts to rely on *Carter*, however, because that case turned on Pennsylvania—not New Jersey—law. In *In re Camden Police Cases*, for example, the court noted that, "in *Carter*, the principal case relied on by Plaintiff, the Third Circuit considered whether, under Pennsylvania law, the Philadelphia District Attorney's Office was an arm of the Commonwealth of Pennsylvania under the *Fitchik* factors."[5] 2011 WL 3651318, at *7 n.7. In *Camden*, in contrast, the court was tasked with "analyz[ing] whether the [Camden County Prosecutor's Office] is an arm of the State of New Jersey under New Jersey law." *Id.* (citing *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 835 (3d Cir. 2009)). Here, as in *Camden*, the question of whether the MCPO is an arm of the state turns on New Jersey law, so I agree with the conclusion that *Carter* "is an unreliable guide to the status of a county prosecutor's office in New Jersey." *Harvey v. Cnty. of Hudson*, No. 14-3670, 2015 WL 9687862, at *5 n. 10 (D.N.J. Nov. 25, 2015) (rejecting plaintiff's attempt to rely on *Carter* to determine whether New Jersey prosecutor's office was an arm of the state).

Under New Jersey law, the types of training and supervisory decisions at issue here are clearly prosecutorial in nature. For instance, in *Hyatt v. County of Passaic*, the common-law sister of a man who was under investigation on child sexual abuse charges was arrested for witness tampering after she did not allow her daughter, the alleged victim, to testify. 340 F. App'x 833, 835 (3d Cir. 2009). After the Passaic County Prosecutor's Office dismissed the charges against her, the plaintiff brought suit asserting federal claims challenging the office's procedures, policies, and training regarding sexually abused child witnesses. *Id.* at 837. In

---

[5] For instance, the court in *Carter* noted that, under Pennsylvania law, the Philadelphia District Attorney's office was "funded by the City of Philadelphia and that the funds for any judgment against it would come from the City," and not from the state treasury, which "weighed heavily against a finding of immunity." *Carter*, 181 F.3d at 348.

affirming the district court's granting of sovereign immunity to the office, the Third Circuit held that these types of decisions required "legal knowledge and discretion and therefore was related to their prosecutorial function." *Id.* Here, Plaintiff challenges the MCPO's procedures, policies, and training regarding unlawful seizures, which, as in *Hyatt*, also require legal knowledge and discretion and, are, therefore, also related to the office's prosecutorial function.[6]

Thus, because the *Fitchik* factors weigh in favor of finding the MCPO to be an arm of the state, the doctrine of sovereign immunity bars Plaintiff's claims against the MCPO.

### B. *Monell* Claim Against MCPO Defendants

In Count II, Plaintiff also seemingly brings a *Monell* claim against the MCPO and against Chief Harris in his alleged capacity as a municipal policymaker.[7] A municipality or municipal agency may be held liable under Section 1983 only if its official policy or custom causes a constitutional injury. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 658 (1978)) (stating that, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").

With regard to the MCPO, however, "a Plaintiff cannot circumvent the State's sovereign immunity by alleging *Monell* liability under section 1983. Specifically, *Monell* liability only attaches to local governments, and does not attach to the State or its agencies." *Rouse v. New*

---

[6] In his opposition brief, Plaintiff attempts to assert that its claims related to "the supervision of detectives" includes "personnel decisions including placement into specific units." ECF No. 21 at 10. As the Complaint does not contain any factual allegations supporting such a claim, however, the Court will construe this assertion as part of Plaintiff's *Monell* claim, Count II, which, as explained in *infra.* II.B, is also barred by sovereign immunity.

[7] Count II names all defendants, but its allegations focus only on the MCPO and on the supervisory role of Chief Harris.

*Jersey Dep't of Health & Human Servs.*, No. CV 15-01511, 2015 WL 5996324, at \*4 (D.N.J. Oct. 13, 2015) (internal citations omitted). As such, having found that the MCPO is an "'arm of the state' for Eleventh Amendment purposes, this Court need not analyze whether Plaintiff has sufficiently plead a claim of *Monell* liability" against the MCPO. *Id.* (internal citations omitted).

Nor can Plaintiff sustain a *Monell* claim against Chief Harris because he is not, as a matter of law, a municipal policymaker potentially subject to *Monell* liability. While *Monell* liability can apply to a municipal decisionmaker with final authority to create municipal policy, *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000), here, Chief Harris is an employee of an agency that is an "arm of the state," and, is, therefore, a state official. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, a plaintiff cannot bring a § 1983 claim against a state actor for conduct occurring in his or her official capacity. *Id.*; *see Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012) ("[S]tate actors in their official capacities are not persons who may be sued under § 1983."). As such, Plaintiff cannot bring a *Monell* claim against Chief Harris.

Thus, Plaintiff's *Monell* claim against the MCPO Defendants must be dismissed.

**C. 1983 Claims Against Individual Defendants in Individual Capacity**

Plaintiff also asserts constitutional claims against the Individual Defendants in their individual capacities for false arrest and/or false imprisonment, and conspiracy.

1. <u>False Arrest/False Imprisonment</u>

Generally, to sustain a claim for false arrest and/or false imprisonment under 42 U.S.C. § 1983, it must be established that there was (1) an arrest and (2) it was made without probable

cause. *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). In New Jersey, false arrest and false imprisonment "are merely separate names for the same" cause of action. *Roth v. Golden Nugget Casino/Hotel, Inc.*, 576 F. Supp. 262, 265 (D.N.J. 1983). When, as here, an arrest is effectuated pursuant to a warrant, and a plaintiff asserts that , a defendant issued an improper affidavit of probable cause, a plaintiff must make a two-pronged showing pursuant to the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978). Under the Franks test, a plaintiff challenging the validity of an affidavit of probable cause must allege that "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Collins v. Christie*, 337 F. App'x. 188, 192 (3d Cir. 2009) (internal citations omitted); *see also Wilson v. Russo*, 212 F.3d 781, 78–87 (3d Cir. 2000); *Roberts v. Ziolkowski*, No. 12–4763 2014 WL 4662255, at *5 (D.N.J. Sept. 18, 2014).

As an initial matter, here, Plaintiff's false arrest/false imprisonment claim fails because, based on the facts in the Complaint, none of individual MCPO Defendants were personally involved in his arrest or detainment. *See Clark v. Prison*, No. CV 15-6174, 2016 WL 5858985, at *3 (D.N.J. Oct. 6, 2016); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988)). Indeed, here, Plaintiff alleges that, although Detective McNally prepared a probable cause affidavit, it was the affidavit of BCDO Detective Hanks that led to Plaintiff's arrest and detainment and that the BCDO officers carried out the actual arrest. Compl. at ¶¶ 30-34; ECF No. 21 at 2.

Further, even if Detectives McNally or Hughes were involved in obtaining the warrant or effectuating the arrest, Plaintiff has not alleged any facts demonstrating knowing, deliberate or reckless statements or omissions in the warrant. Plaintiff alleges that the warrant was supported by a forensic review of O.M.'s phone that uncovered evidence of illicit, sexual communications between Plaintiff and O.M. Even if a subsequence forensic review purportedly exonerated Plaintiff, nowhere does Plaintiff claim that the detectives fabricated the evidence in the affidavit or that they did not believe it to be true at the time.

The Court notes that, in his opposition brief, Plaintiff also asserts that that the BCDO "was acting at the request and on behalf of the Mercer County Prosecutor's Office," when it executed the arrest. ECF No. 21 at 2. However, a district court may not consider issues raised for the first time in a brief. *Perry v. Comm'r*, 136 F. App'x 461, 462 (3d Cir. 2005). If Plaintiff wishes to amend his Complaint to assert this allegation, he may do so.[8]

Thus, because probable cause existed, Plaintiff's false arrest/false imprisonment claim is dismissed without prejudice.[9]

> 2. Civil Rights Conspiracy

The Court will also dismiss without prejudice Plaintiff's conspiracy claim under § 1983 for failure to state a claim for relief. Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely,

---

[8] As currently pled, it appears that qualified immunity would also bar Plaintiff's false arrest/false imprisonment claims. As Plaintiff is being granted leave to amend, however, I will not address this issue at this time, as any new factual allegations could impact the analysis.

[9] Plaintiff also asks to be given the opportunity to amend his complaint to supplement his false imprisonment/false arrest claims with the arrest warrant and affidavit from Detective McNally that he attaches to his opposition brief. Plaintiff may also submit this exhibit as part of an amended complaint.

agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). Here, the Complaint contains no facts related to a meeting of the minds between MCPO Defendants and any of the other parties involved in Plaintiff's arrest or imprisonment. Thus, this claim must also be dismissed.

### D. NJCRA Claims

In Counts II and III, Plaintiff also asserts that MCPO Defendants violated his rights under the New Jersey Constitution. The Court construes these as claims under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA was modeled after § 1983, and, thus, courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J.2011); *Chapman v. New Jersey*, Civ. No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart ...."); *Armstrong v. Sherman,* Civ. No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."). Accordingly, Plaintiff's New Jersey State Constitution claim will be interpreted analogously to his § 1983 claim. *Trafton*, 799 F.Supp.2d at 443–44; *see Hedges v. Musco*, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment). Because the Court has concluded that there was no violation of Plaintiffs' constitutional rights in this case, and that Plaintiffs' § 1983 claims fail, Plaintiff's NJCRA claims, also fail, and must, therefore, be dismissed.

### E. Tort Claims Against Individual Defendants

Plaintiff also asserts two common law tort claims against individual defendants: negligence (Count IV) and negligent hiring, training, and supervision (Count V).[10] Under the New Jersey Tort Claims Act, a person seeking to assert tort claims against a public entity or public employee must first file a notice of claim with the proper entity within 90 days of the claim's accrual. *See* N.J. Stat. Ann. § 59:8-8; *see also Johnson v. United States*, 469 F. App'x 79, 81 (3d Cir. 2012). *See generally* N.J. Stat. Ann. §§ 59:8-1 through 59:8-11.

Here, the Complaint contains no allegations that Plaintiff filed the required notice before bringing suit. Although Defendants do not raise this argument, the notice requirement under the Tort Claims Act is "a jurisdictional precondition" to filing a tort claim against public employees that the Court can address *sua sponte*. *Ptaszynski v. Uwaneme,* 371 N.J. Super. 333, 343 (App. Div. 2004) (internal quotations omitted). Here, Plaintiff failed to make the required demonstration in the Complaint. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain ... the grounds for the court's jurisdiction[.]"). Because the Complaint does not allege that Plaintiff filed a notice of tort claims with respect to the MCPO Defendants, Plaintiff has failed to establish this Court has jurisdiction over Plaintiff's state law claims. *See Thompson v. Lanigan*, No. 16-1913, 2017 WL 1536226, at *7 (D.N.J. Apr. 27, 2017).

Plaintiff's state law tort claims against Individual Defendants are, therefore, dismissed.[11]

---

[10] Negligence, and negligent hiring, training, and supervision are recognized torts under New Jersey law. *See Scarfi v. Aetna Cas. & Sur. Co*., 233 N.J. Super. 509, 515 (App. Div. 1989).

[11] In his opposition brief, Plaintiff additionally alludes to a § 1983 claim against Chief Harris in his individual capacity for his "role in personnel decisions within the Mercer County Prosecutor's Office." ECF No. 21 at 15. Plaintiff's Count V, negligent hiring, training and supervision, is not raised under § 1983 and appears to be a state common law claim. However, to the extent that Plaintiff wished to bring this claim under § 1983, it must also fail. In order to bring a suit against an individual decisionmaker under § 1983, the individual "must have personal involvement in the alleged wrongs," which can be shown by "allegations of personal direction." *Wright v. Warden, Forest SCI*, 582 F. App'x 136, 137 (3d Cir. 2014) (citing *Rode*, 845 F.2d at 1207). Plaintiff only mentions Harris by name once in his Complaint and does not allege any personal

## IV.    **CONCLUSION**

For the foregoing reasons, MCPO Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED**, and Counts II, IV, and V are dismissed with prejudice. Counts I and III against Individual Defendants in their individual capacities are dismissed without prejudice, and any amended complaint must be filed within twenty (20) days of this Opinion. In addition, the County of Mercer's unopposed motion to dismiss is also **GRANTED**, and all claims against the County of Mercer are dismissed with prejudice.


Dated: October 23, 2018                                    /s/ Freda L. Wolfson
                                                           Hon. Freda L. Wolfson
                                                           United States District Judge

---

involvement in his arrest, detainment, or in the creation of any unconstitutional polices or customs.