*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN C. LEPPING, <br><br> Plaintiff, <br><br> v. <br><br> DETECTIVE ROBERT MCNALLY, <br> DETECTIVE EDWARD HUGHES, et al., <br><br> Defendants. | Civil Action No. 18-2118 (FLW) (ZNQ) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Justin C. Lepping ("Plaintiff") alleges that Defendants Detective Robert McNally ("Det. McNally") and Detective Edward Hughes ("Det. Hughes") (together, "Defendants"), both of the Mercer County Prosecutors Office ("MCPO"), violated his civil rights under the United States, New Jersey, and Pennsylvania Constitutions by falsely arresting him for charges concerning a minor. Before the Court is a motion for summary judgment filed by Defendants pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' Motion is **GRANTED**.

**I.  BACKGROUND**

    **a.  Factual Background[1]**

On December 1, 2016, Plaintiff first contacted O.M., a ten-year-old girl, by sending her a text message that stated "Hey. Justin." (Defs.' SUMF ¶ 1.) That same day, O.M. added Plaintiff to her contacts as "Justin." (*Id.* ¶ 2.) Later that evening, O.M. Face Timed Plaintiff, who accepted

---

[1] The following facts are undisputed unless otherwise noted.

1

the call.  (*Id.* ¶ 3.)  During the FaceTime call, O.M. took three screenshots—one which clearly shows Plaintiff's face and two which show him touching his erect penis.  (*Id.* ¶ 4.)  In the two screenshots where Plaintiff is touching his erect penis, O.M.'s face is visible in the upper left corner of the screen and is the image that would have been displayed on Plaintiff's phone during the FaceTime call.  (*Id.* ¶ 5.)  According to cell phone records, the FaceTime call between O.M. and Plaintiff lasted for two minutes and fifty-four seconds.  (*Id.* ¶ 6.)

On December 7, 2016, O.M.'s mother, Melissa, discovered the screenshots and found other sexually explicit text messages and images on O.M.'s cell phone.  (*Id.* ¶¶ 7–8.)  That same day, Melissa went to the Hamilton Township police station and revealed to Det. McNally, who was called in to investigate the allegations, that she had found a picture of a man's penis on O.M.'s phone.  (*Id.* ¶¶ 7, 9–10.)  Melissa told authorities that "[t]here was one picture of his face and a second picture of him holding his penis.  The one picture . . . where you see the penis is . . . the same couch from the guy's picture."  (*Id.* ¶ 11.)  Melissa also disclosed that she had discovered other sexually explicit pictures and videos on O.M.'s phone, including photos of O.M.'s breasts, vagina, and buttocks, and a video where O.M. appeared to be naked and masturbating.  (*Id.* ¶¶ 13–14.)  Melissa additionally described an exchange from October 29, 2016, in which a man asked O.M. to send him a video of herself shaking and slapping her buttocks, and touching her vagina.  (*Id.* ¶ 15.)  The man from the October 29 exchange asked O.M. to call him "Master" or "Daddy." (*Id.* ¶ 16.)  While Melissa was not sure, she thought the man from the October 29 exchange might be named Vincent.  (*Id.* ¶ 17.)

Later that day, Det. McNally sent O.M.'s phone to Det. Hughes of the MCPO's Cyber Crimes Unit for forensic analysis.  (*Id.* ¶ 20.)  That analysis confirmed that O.M. had several saved screen shots, including one of Plaintiff, a white male with dark hair and a full beard, lying on a

couch, and two of his erect penis that appear to show the same couch/background. (*Id.* ¶ 22.) Forensic analysis of the phone also uncovered two sexually explicit Snap Chat conversations between O.M. and a contact listed as "Master"[2] and several graphic nude photographs and videos of O.M. taken on October 29, 2016. (*Id.* ¶¶ 23–25.) Also saved was a Snap Chat conversation with "Master" that read: "1: boobs 2: ass 3: pussy 4: fingering your pussy 5: full body naked And What are you doing right now?" (*Id.* ¶ 23.) Based on the information obtained from O.M.'s cell phone, Det. McNally apparently reached the mistaken conclusion that Plaintiff was Master and, thus, attributed hundreds of sexually explicit text messages discovered on O.M.'s phone to Plaintiff. (*Id.* ¶ 27.)

On January 4, 2017, Det. McNally met with Assistant Prosecutor Katie Magee to review the evidence obtained from O.M.'s phone. (*Id.* ¶ 28.) Based on the information available to them, Det. McNally and Magee made the determination to charge Plaintiff with aggravated sexual assault, N.J. Stat. Ann. § 2C:14-2(a)(1); sexual assault, N.J. Stat. Ann. § 2C:14-2(b); child endangerment, N.J. Stat. Ann. § 2C:24-4a(1); and possession of child pornography, N.J. Stat. Ann. § 2C:24-4b(5). (*Id.* ¶ 29.) Thereafter, using the cell phone number from the FaceTime call, Det. McNally identified and located Plaintiff, who lived in Sellersville, Pennsylvania. (*Id.* ¶ 30.)

On January 11, 2017, Det. McNally prepared and submitted an affidavit for an arrest warrant. (*Id.*) In that affidavit, Det. McNally indicated that he had interviewed the ten-year-old victim who confirmed that she had communicated with the perpetrator using her cell phone, specifically with Snap Chat, FaceTime, and text messaging. (*Id.* ¶ 31.) In addition, Det. McNally stated that the victim had purportedly received photos of the perpetrator's nude penis and that Det. McNally was able to verify this information after conducting a consent search of the victim's

---

[2] The Snap Chat username for "Master" was vm760. (Defs. SUMF ¶ 23.)

3

phone. (*Id.* ¶¶ 32–33.) Det. McNally also referenced other messages in the affidavit, presumably from "Master," in which the perpetrator requests nude images and videos of O.M. performing pornographic acts. (*Id.* ¶ 34.) A neutral magistrate reviewed the warrant application, found probable cause, and duly executed the application. (*Id.* ¶ 35.) Also on January 11, 2017, Detective Dave Hanks ("Det. Hanks") of the Bucks County District Attorney's Office, relying on the information contained in the New Jersey affidavit of probable cause and arrest warrant, applied to a Pennsylvania magistrate for an arrest warrant for Plaintiff, which was granted. (*Id.* ¶ 36.) The Pennsylvania authorities did not conduct an independent investigation into the allegations contained in the affidavit of probable cause. (Pl.'s Resp. to Defs.' SUMF ¶ 36.)

Pennsylvania authorities arrested Plaintiff at his home in Sellersville, Pennsylvania, on January 13, 2017. (*Id.* ¶ 37.) Plaintiff was thereafter extradited to New Jersey on January 20, 2017. (*Id.* ¶ 38.) Following Plaintiff's arrest, his criminal defense attorney retained a cell phone forensic expert to examine the evidence relied upon in support of the affidavit of probable cause and data found on Plaintiff's cell phone.[3] (Defs. Mot., Ex. J.) The data extracted from Plaintiff's cell phone was not available at the time of his arrest. (Defs.' SUMF ¶ 39.) The expert report opines that based on the data available in O.M. and Plaintiff's phones, Plaintiff could not have been "Master." (*Id.* ¶ 40.) In that connection, the expert report claims that the only contact between Plaintiff and O.M. was the FaceTime call O.M. initiated on December 1, 2016. (*Id.* ¶ 41.)

---

[3] Plaintiff appears to dispute whether the expert retained by his defense counsel conducted a forensic examination of Plaintiff's cell phone. Specifically, Plaintiff contends that his expert "did no[t] have access to any additional data than that of the State." (Pls. Resp. to Defs.' SUMF ¶ 39.) This statement, however, is unsupported by the Record. Indeed, a review of the forensic expert's report indicates that he reviewed a report of a data extraction of Plaintiff's iPhone. Put simply, there is no basis for Plaintiff to contend that the State was in possession of this information at the time of Plaintiff's arrest. The affidavit of probable cause makes no reference to any review of Plaintiff's iPhone and, further, Plaintiff offers no facts or evidence to show that the State extracted such data from Plaintiff's iPhone prior to his arrest.

Notably, however, the report makes no mention of the screenshots O.M. took during the FaceTime call or the text message purportedly sent to O.M. by Plaintiff. (*Id.* ¶ 42.) Nevertheless, the MCPO decided to voluntarily dismiss the charges against Plaintiff. (*Id.* ¶ 43.)

### b. Procedural History

Plaintiff filed suit against Defendants, the MCPO, and other individuals on February 14, 2018. (ECF No. 1.) In the initial complaint, Plaintiff alleged that the MCPO had wrongfully moved to detain him without bail pending trial and asserted claims of false arrest, *Monell* liability, conspiracy under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, negligence, and negligent hiring, training, and supervision. (*See id.*) On October 23, 2018, I granted Defendants' motion to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). (ECF No. 29.) As relevant here, I dismissed Plaintiff's false arrest claim because the Complaint did not allege that Defendants were personally involved in his actual arrest. (*Id.* at 17–18.) Moreover, I found that the Complaint did not plausibly allege that the affidavit of probable cause contained any knowing, deliberate, or reckless statements or omissions. (*Id.*) Plaintiff thereafter filed an Amended Complaint that asserts a single claim for false arrest in violation of the United States, Pennsylvania, and New Jersey Constitutions against Defendants.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of*

5

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.

*Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DISCUSSION

Plaintiff asserts a single claim against Defendants: for false arrest in violation of the Fourth Amendment of the United States Constitution.[4] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[4] While Plaintiffs' Amended Complaint purports to assert claims pursuant to the Fifth, Sixth, and Fourteenth Amendments, and pursuant to unspecified provisions of the Pennsylvania Constitution, he makes no mention of those claims in his Opposition to Defendants' motion. It appears he has abandoned these claims. In any event, Plaintiff cannot proceed with such claims. First, Plaintiff cannot proceed with a claim under the Fifth Amendment against Defendants, who are state employees, because "the Fourteenth Amendment applies only to acts under color of state law whereas the Fifth Amendment applies to actions of the federal government." *B&G Const. Co., Inc. v. Director, Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). Nor can Plaintiff proceed with a claim under the Sixth Amendment because he does not allege that any of his rights protected by the Sixth Amendment were violated. Further, to the extent Plaintiff asserts that Defendants' conduct violated the Fourteenth Amendment, it must be dismissed because it is well established that "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268–69 (3d Cir. 2000). In that regard, "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Id.* at 269. Finally, Plaintiff cannot proceed with a claim for any alleged violation of the Pennsylvania Constitution because "Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." *Hamilton v. Spriggle*, 965 F. Supp. 2d 550, 577 (M.D. Pa. 2013) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008)).

deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress.

*Id.* "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two–and only two– allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").[5]

### A. Claim against Det. Hughes

First, Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim against Det. Hughes, because Plaintiff has failed to show that Det. Hughes was personally involved in Plaintiff's arrest. It is axiomatic that a defendant in a civil rights action must have personal involvement in the alleged wrongdoing. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In that connection, a plaintiff may demonstrate personal involvement through "allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff contends that Det. Hughes was personally involved because Plaintiff's arrest by the Bucks County District Attorney's Office was based on the investigation conducted by Dets. Hughes and McNally. (Pl.'s Opp. Br., at 9.) The Record, however, is devoid of any evidence to demonstrate that Det. Hughes was involved in Plaintiff's

---

[5]    To the extent Plaintiff brings a claim under the New Jersey Civil Rights Act, the Court's analysis of his section 1983 false arrest claim applies equally to his NJCRA claim as "courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983" and "have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016).

8

arrest. Indeed, there is no dispute that Det. Hughes's only involvement in the investigation of Plaintiff was conducting a forensic analysis on O.M.'s cell phone. (*See* Defs.' SUMF ¶ 21; Pl.'s SUMF ¶ 21.) Indeed, Det. Hughes testified at his deposition that he did not participate in the drafting of the affidavit of probable cause, nor did he review the affidavit prior to its submission to the neutral magistrate. (Dep. of Det. Hughes, at 43:1–23.) Further, Det. Hughes testified that he was never asked to make a conclusion about who was responsible for the 572 sexually explicit conversations between O.M. and "Master" found on O.M.'s cell phone. (*Id.* at 34:24–35:5.) Plainly, this evidence is insufficient to demonstrate that Det. Hughes was personally involved in Plaintiff's arrest to permit liability under section 1983. Accordingly, summary judgment is granted in favor of Det. Hughes.

### B. Claim Against Det. McNally

Defendants argue that summary judgment should be entered in favor of Det. McNally because (1) he was not personally involved in Plaintiff's arrest, and (2) there was sufficient probable cause for Plaintiff's arrest. Defendants further argue that Det. McNally is entitled to qualified immunity because Plaintiff did not have a clearly established constitutional right to be free from arrest after exposing himself to a ten-year-old girl.

As to Defendant's first argument, Plaintiff maintains that "detectives from the Bucks County District Attorney's Office were acting at the behest and direction of the [MCPO], and arrested Plaintiff solely as a courtesy based on the investigation carried out by" Det. McNally. (Pl.'s Opp. Br., at 9.) While, as discussed above, an officer must be personally involved in the allegedly unconstitutional conduct for liability to attach under section 1983, the Third Circuit has explained that "[a]s a general rule, a government official's liability for causing an arrest is the same as for carrying it out." *See Berg*, 219 F.3d at 272. Thus, where a police officer obtains an arrest

warrant without probable cause, he may still be liable for false arrest even if he did not actually effectuate the arrest in question. *See Malley v. Briggs*, 475 U.S. 335, 344–45, 344 n.7 (1986). Here, the Bucks County District Attorney's Office obtained a warrant for Plaintiff's arrest based on the same factual allegations set forth in Det. McNally's affidavit of probable of cause. As such, it is clear that Det. McNally's "actions set the arresting officer in motion." *Berg*, 219 F.3d at 272. Because I find that Det. McNally was, therefore, personally involved in Plaintiff's arrest, I turn to the merits of Plaintiff's claim.

To succeed on a claim of false arrest under the Fourth Amendment, "a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). In other words, the question of whether a constitutional violation occurred turns on whether "'a reasonable officer could have believed that probable cause existed' to arrest the plaintiff at that time." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (quoting *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007)). Notably, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1998). In that connection, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been committed or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). Thus, the arresting officer must only reasonably believe at the time of the arrest that an offense has or is being committed, a significantly

lower burden than proving guilt at trial. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

Here, Plaintiff argues that there could be no probable cause to support his arrest because the arrest warrant was based on "recklessly" false statements. Where a plaintiff is arrested pursuant to a valid warrant, the Court's determination of whether probable cause rests on two questions: (1) "whether 'the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) "whether those assertions of omissions were 'material, or necessary, to the finding of probable cause.'" *Andrews*, 853 F.3d at 697 (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016)). However, "[a]n officer's negligence or innocent mistake is insufficient." *Wilson v. Russo*, 212 F.3d 781, 789–90 (3d Cir. 2000) (quoting *Malley*, 475 U.S. at 341). Finally, the analysis of whether there was probable cause for a warrant to issue requires the court to "identify any improperly asserted or omitted facts and, if it determines there were reckless misrepresentations or omissions, 'excise the offending inaccuracies and insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Dempsey*, 834 F.3d at 470.

The Third Circuit has explained that "assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Wilson*, 212 F.3d at 788. In that regard, "[a]n assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information reported." *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

11

Plaintiff contends that the following false statements were made in Det. McNally's affidavit of probable cause:

> Upon reviewing the 800 plus chat messages ibn O.M.'s cellular telephone forensic report, I discovered approximately 572 chats that appear to be between O.M. and "Justin." Those 572 chats occurred between December 1, 2016 at approximately 8:49 pm and December 3, 2016 at approximately 11:50 am. Of the 572 chats that I reviewed, all of the chats are sexual in nature with "Justin" asking O.M. to send him nude photographs, videos, and to be his sex slave. "Justin" relates during his chats that he wants to have sex with O.M., her friends, and her mother. "Justin" also requests to meet with O.M. asking for her home address and telling her he wants to come pick her up and take her to a hotel for sex. Based on the conversational chats between "Justin" and O.M., it appears that O.M. sent "Justin" nude photographs and videos of herself and "Justin" in turn sent photographs of his face, penis and advertisements for "sex toys." All of these chats coincide with the aforementioned dates listing the creation of nude photographs and videos, [contacts], text messages and Face Time entries.

Further, Plaintiff maintains that the affidavit of probable cause "failed to clarify that Plaintiff and 'Master/Vincent' were not the same individual." (Pl.'s Opp. Br., at 11.) In that regard, Plaintiff further submits that Det. McNally "failed to disclose that he had not examined the information contained within O.M.'s phone to ascertain whether the obscene messages and images from Vincent, Master, or Justin were from multiple individuals." (*Id.* at 12.) By omitting this information, Plaintiff argues that Det. McNally created the false impression that there was probable cause to arrest Plaintiff.

There is no dispute that the affidavit of probable cause incorrectly attributed the sexually explicit messages exchanged between O.M. and "Master" to Plaintiff. While Plaintiff contends that these false statements and omissions were made recklessly to create the false impression that there was probable cause to arrest Plaintiff, it is not necessarily clear that Det. McNally knew that the sexually explicit Snap Chats sent by "Master" were not sent by Plaintiff. Indeed, in her

12

statement to police, O.M.'s mother seemed to communicate that O.M. was only in contact with one man—the man in the FaceTime screenshots (*i.e.*, Plaintiff). (*See* Defs.' SUMF, Ex. E, at 2–3.) Moreover, while O.M. stated that "Master" could have gone by the name Vincent, that did not foreclose the possibility that Plaintiff was "Master." Rather, Det. McNally drew a rather reasonable inference that Plaintiff was "Master" based on the FaceTime screenshots in which Plaintiff exposed his erect penis. Plaintiff has not pointed to any evidence that suggests otherwise.

However, even if the Court were to excise these statements from the affidavit of probable cause, it is clear that there was probable cause to arrest Plaintiff. In order to effect a lawful arrest, there need only be probable cause for one of the charged offenses. *See Dempsey*, 834 F.3d at 477 (observing that "false arrest . . . claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee"); *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist to any offense that could be charged under the circumstances."). Excising all information regarding the sexually explicit messages, photos, and videos exchanged between O.M. and "Master," the Court is left with the assertion that O.M. and Plaintiff had an approximately 3-minute FaceTime conversation in which Plaintiff exposed his erect penis. Plaintiff does not dispute that the FaceTime call occurred. These facts alone are sufficient to create probable cause that Plaintiff violated N.J. Stat. Ann. § 2C:24-4a(1) as they tend to suggest that Plaintiff engaged in sexual conduct which would "impair or debauch the morals of a child." *See* N.J. Stat. Ann. § 2C:24-4a(1).

Plaintiff, nevertheless, contends that there was no probable cause to arrest him on the charge of child endangerment, because he did not know that O.M. was under the age of sixteen. (Pl.'s Opp. Br., at 14.) This argument misses the mark as it is not only based on Plaintiff's incorrect statement of the law, but it also misunderstands the scope of the probable cause analysis. Plaintiff

contends that to sustain a conviction for child endangerment, the State must show that the defendant knew that the victim was under the age of sixteen at the time the sexual conduct occurred. This argument, however, is a defense to be raised at a criminal trial and does not factor into whether there was probable cause for his arrest. *See Davis v. Malitzki*, 451 F. App'x 228, 233 (3d Cir. 2011) (observing that "evidence that might exonerate a defendant does not defeat probable cause"). Moreover, the crime of child endangerment does not require that the defendant know that the victim was under the age of sixteen. Rather, "[t]he elements of endangerment under N.J. Stat. Ann. § 2C:24-4a(1) are: (1) that the defendant engaged in sexual conduct; (2) defendant engaged in the sexual conduct knowingly; (3) that the sexual conduct was with a child under the age of sixteen; and (4) that the conduct had the capacity to debauch or impair the morals of the child." *In re W.P.*, 2011 WL 2330902, at *2 (N.J. Super. App. Div. June 15, 2011); *State v. Bryant*, 419 N.J. Super. 15, 17–18 (App. Div. 2011) (holding that the *mens rea* requirement of the child endangerment statute applies only to the engaging in sexual conduct element of the offense). In any event, it was reasonable for Det. McNally to infer, based on the available information, that Plaintiff, who Face Timed with O.M. and exposed his penis, knew that O.M. was under the age of sixteen. Indeed, the FaceTime screenshots show O.M.'s face and, despite Plaintiff's assertions to the contrary, demonstrate that Plaintiff was touching his erect penis while O.M., a ten-year-old girl, watched. Accordingly, there was certainly probable cause to arrest Plaintiff for the crime of child endangerment under N.J. Stat. Ann. § 2C:24-a(1).

As I conclude that there was probable cause to support Plaintiff's arrest for child endangerment, his false arrest claim against Det. McNally fails as a matter law. In other words,

Plaintiff has failed to demonstrate any constitutional violation.[6]  Accordingly, summary judgment is entered in favor of Det. McNally.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: May 25, 2021                                             /s/ Freda L. Wolfson
                                                                Freda L. Wolfson
                                                                U.S. Chief District Judge

---

[6] Because I find that Plaintiff's arrest was supported by probable cause, I need not reach the questions of whether Defendants are entitled to qualified or prosecutorial immunity.